IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

ALEXIS CONCEPCION,

Defendant.

CRIMINAL ACTION
NO. 02-488

**OPINION**

**Slomsky, J.**                                                    **January 6, 2021**

## I.      INTRODUCTION

Defendant Alexis Concepcion ("Defendant"), who is serving a 211-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  In his Motion (Doc. No. 129), Defendant requests either a reduction of his sentence to time served or that he be permitted to serve the remainder of his sentence under home confinement.  He argues that the Court should grant his motion because the COVID-19 pandemic, the conditions at his prison, and his underlying health conditions place him at an increased risk of harm from the COVID-19 virus.  Defendant also contends that his release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors because he has served approximately 195 months of his sentence and has many accomplishments while incarcerated.  The Government opposes Defendant's Motion, citing the insufficiency of COVID-19 risk factors in his medical records, the severity of Defendant's underlying offenses, Defendant's conduct while incarcerated, and the numerous measures the Bureau of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities.  For reasons that follow, Defendant's Motion will be denied.

II.      **BACKGROUND**

A.      **Defendant's Prior Convictions**

On September 15, 2001, the Allentown Police Department ("APD") executed a search warrant at a residence in relation to a drug trafficking operation.  (See Doc. No. 131 at 1.)  Upon entering the residence, APD officers apprehended Defendant as he was attempting to flee the premises.  (See id.)  They searched the residence and found cocaine, marijuana, heroin, drug-related paraphernalia, two firearms, ammunition, and several pictures of Defendant and a child holding a firearm.  (See id. at 2.)  Defendant claimed ownership of these items.  (See id.)

On May 7, 2003, following his guilty pleas, Defendant was sentenced to 250 months' imprisonment followed by five years' supervised release for: (1) possession with intent to distribute cocaine base; (2) possession of a firearm in furtherance of a drug trafficking crime; (3) possession of a firearm by a convicted felon; and (4) possession of ammunition by a convicted felon.  (See id. at 2-3.)  On April 4, 2019, pursuant to the First Step Act, Defendant's sentence was reduced to 211 months' imprisonment followed by five years' supervised release.  (See id. at 3.)  He has served approximately 195 months[1] of his sentence, and it is anticipated that he will be released on November 16, 2021.  (See id.)  He is serving his sentence at the Federal Medical Center Devens ("FMC Devens") in Ayer, Massachusetts.  (See Doc. Nos. 129 at 1; 131 at 3.)

Defendant has an extensive criminal history that commenced when he was twelve years old.  (See Doc. No. 131 at 16.)  This history, aside from the offenses for which Defendant is presently incarcerated, includes adjudications for possession of firearms and cocaine, disorderly conduct, gunpoint robbery, reckless endangerment, carrying a firearm without a license, simple assault, and burglary.  (See id.)  Furthermore, while incarcerated, Defendant has been sanctioned

---

[1]   Defendant has served approximately 185 months of his 211-month sentence and has received approximately ten months of credit for good conduct.  (See Doc. No. 131 at 3.)

"for using the prison mail service without authorization[,] . . . [being] absent from his assignment[,] . . . twice us[ing] another inmate's phone access card[,] and . . . [his] involve[ment] in introducing heroin into the prison through the mail." (Id. at 3.)

      **B.**     **Defendant's Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C.**
             **§ 3582(c)(1)(A)(i) and the Government's Response**

On June 15, 2020, Defendant sent a request for compassionate release to the Warden at FMC Devens. (See Doc. Nos. 129 at 3; 131 at 3.) On June 20, 2020, the Warden denied Defendant's request. (See ids.) Thereafter, on September 8, 2020, Defendant filed the instant Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting that his sentence be modified to time served or, alternatively, that he be released to home confinement for the remainder of his sentence. (See Doc. No. 129 at 1-2.) He also has filed a Reply (Doc. No. 134) to the Government's Response in Opposition to his Motion and a Character Letter (Doc. No. 135) written on his behalf by his girlfriend, Katherine Oquendo.

Defendant contends that the combination of his underlying health conditions and the conditions at FMC Devens place him "at high risk of serious illness or death if he contracts COVID-19" and amount to extraordinary and compelling circumstances justifying his release. (Doc. No. 129 at 1, 3-4.) To demonstrate his medical condition, Defendant provides his medical records, which he argues demonstrate that he suffers from hypertension and diabetes.[2] (See id. at 3.) He supplements his medical records by noting that he "has learned how to control his high glucose levels by controlling his diet and exercising." (Doc. No. 134 at 1.)

---

[2]  Defendant also claims that he suffers from "high blood glucose levels." (Doc. No. 129 at 3.) Diabetes is a disease that results in high blood glucose levels. See What is Diabetes, CENTERS FOR DISEASE CONTROL AND PREVENTION (June 11, 2020), https://www.cdc.gov/diabetes/basics/diabetes.html.

Moreover, Defendant claims that he is at risk of contracting COVID-19 because of increasing COVID-19 cases at FMC Devens.[3]  (See Doc. No. 129 at 4-5.)  He further argues that the BOP's COVID-19 precautions have "been a failure" because 13,000 inmates have contracted the virus and 149 inmates and staff have died from the virus.  (Doc. No. 134 at 1.)  Finally, Defendant contends that a modification of his sentence is consistent with the § 3553(a) sentencing factors[4] because he accepts responsibility for his actions, has approximately fifteen months of incarceration remaining on his sentence, and has worked to rehabilitate himself while in prison because he obtained his GED and completed BOP classes and programs.  (See Doc. No. 129 at 7-8.)

---

[3]  Defendant notes that, when he filed his Motion on September 8, 2020, twenty-three inmates and two staff members at FMC Devens had COVID-19.  (See Doc. No. 129 at 4.)

[4]  When modifying a sentence under 18 U.S.C. § 3582(c)(1)(A), a court must consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a), which include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

On November 30, 2020, the Government filed a Response to Defendant's Motion (Doc. No. 131). In its Response, the Government argues that the Motion should be denied because Defendant has not shown an extraordinary and compelling reason to justify his compassionate release and because "the 3553(a) factors militate in favor of service of the full sentence. . . ." (Id. at 16.) The Government supplements its argument with a discussion on the response to the COVID-19 pandemic by the BOP and FMC Devens. (Id. at 4-9.)

First, the Government submits that Defendant's health records do not support a finding that he has hypertension or diabetes. (See id. at 4, 14.) The Government states that Defendant has not been diagnosed with these conditions and that "he is a healthy person who rarely visits Health Services." (Id. at 4.) The Government does note, however, that Defendant's records establish that he is obese because he has a body mass index ("BMI") of 32.2 kg/m$^2$. (See id.) Despite the fact that obesity is listed by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor, the Government argues that this is not an extraordinary and compelling circumstance warranting Defendant's compassionate release because Defendant's BMI has fluctuated and courts have routinely denied compassionate release based solely on obesity. (See id. at 4, 14-15.)

Second, the Government asserts that the § 3553(a) sentencing factors weigh in favor of Defendant's continued confinement. (See id. at 16.) To support this argument, the Government highlights Defendant's criminal activity before his present incarceration and his disciplinary infractions while incarcerated as reasons warranting his full service of his sentence. (See id. at 3, 16.)

Finally, the Government argues that the BOP and FMC Devens have enacted precautions to prevent the spread of COVID-19. (See id. at 4-9.) The BOP requirements include the

following measures: implementing social distancing, hygienic and cleaning protocols, quarantining and treating symptomatic inmates and new inmates, limiting group gatherings and inmate movement among facilities, checking staff members' temperatures daily, requiring mandatory self-reporting of symptoms, and prohibiting social visits.  (See id. at 4-6.)  The Government also notes that the Attorney General directed the BOP to exercise discretion in placing an inmate in home confinement during the final six months or 10 percent of a sentence, whichever is shorter, if it is warranted by the totality of the circumstances.  (See id. at 7.) Moreover, the Government concedes that FMC Devens previously suffered a COVID-19 outbreak that resulted in forty-four inmates testing positive for and two inmates dying from COVID-19, but it remarks that, when it filed its Response, there were no known cases at the facility.  (See id. at 8-9.)

III.    DISCUSSION

   A.    The Analytical Framework Regarding Motions for Compassionate Release
         Pursuant to § 3582(c)

       Generally, a district court "may not modify a term of imprisonment once it has been imposed. . . ."  18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A).  As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[5]   See § 3582(c)(1)(A)(i).  The statute provides, in part, that a court:

---

[5]    A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by

> [M]ay reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that
> does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in [§ 3553(a)]
> to the extent that they are applicable, if it finds that—
>
>> (i)  extraordinary and compelling reasons warrant such a
>> reduction; . . .
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).   Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.   28 U.S.C. § 994(t).   Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission.   Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . .
> that—
>
>> (1)  (A)  Extraordinary and compelling reasons warrant the
>> reduction; . . .
>
>> (2)  the defendant is not a danger to the safety or any other

---

the warden of the defendant's facility, whichever is earlier. . . ."  18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period.  See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion.  On June 15, 2020, he sent a request for compassionate release to the Warden at FMC Devens, and the Warden denied his request on June 20, 2020.  (See Doc. No. 131 at 3.)  On September 8, 2020, over thirty days after this denial, he filed his Emergency Motion to Reduce Sentence. (See Doc. No. 129.)  Because thirty days lapsed from the date when the Warden received Defendant's request to the date when Defendant filed his Motion, he met the exhaustion requirement.

person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3)  the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

      Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances.  § 1B1.13, App. Note 1(A)-(C).  This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
>     (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amytrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>     (ii)   The defendant is—
>
>       (I)    suffering from a serious physical or mental condition,
>
>       (II)   suffering from a serious functional or cognitive impairment, or
>
>       (III)  experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant (i) is at least 65 years old;  (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has

served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  Family circumstances.

(i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C).  Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[6]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive. . . ."  United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.14 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A).  See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19."  United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (quoting United States v. Brooks, No.

---

[6]  Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement.  See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using section 1B1.13 as "helpful guidance.").

07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)) (internal quotation omitted). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release. . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

. . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6).  Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B.     Defendant's Emergency Motion to Reduce Sentence Will Be Denied

Defendant's Motion will be denied because he has not shown an extraordinary and compelling reason for his release.  Further, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[7]  Each of these conclusions is discussed seriatim.

### 1.     Defendant's Medical Conditions Do Not Present Extraordinary and Compelling Reasons for His Release

Defendant does not establish the required particularized vulnerability to COVID-19 and its effects required to constitute an extraordinary and compelling reason for his release.  He does not show that he suffers from sufficiently serious medical conditions that place him at a uniquely high risk of illness or death if he were to contract COVID-19, even though the existence of COVID-19 at FMC Devens is more than merely speculative.[8]

---

[7]   Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence is also consistent with applicable policy statements of the Sentencing Commission.

[8]   There is an actual, non-speculative risk of contracting COVID-19 at FMC Devens.  In

11

Defendant does not show that he suffers from sufficiently serious medical conditions that place him at a uniquely high risk of illness or death if he were to contract COVID-19.  Defendant asserts that he suffers from hypertension and diabetes, and the Government concedes that Defendant is obese.  (See Doc. Nos. 129 at 3; 131 at 4.)  Defendant's medical records, however, do not show that he suffers from either hypertension or diabetes because he has not been diagnosed with either disease.  Furthermore, despite Defendant having elevated blood pressure readings, these records state that he has elevated blood pressure without hypertension.  (See Doc. No. 129 at 16, 29.)  Defendant also concedes that he "has learned how to control his high glucose levels by controlling his diet and exercising[,]" highlighting his ability to provide self-care while incarcerated.  (Doc. No. 134 at 1.)  Finally, although Defendant was obese in November 2019, his weight has fluctuated while incarcerated.[9]  (See Doc. Nos. 129 at 6, 14, 23, 26, 28, 38; 132 at 3, 6.)

Moreover, his obesity, alleged hypertension, and alleged diabetes do not present the kind

---

Defendant's Motion filed on September 8, 2020, he asserts that twenty-three inmates and two staff members had recently tested positive for COVID-19.  (See Doc. No. 129 at 5.) However, in the Government's Response filed on November 30, 2020, the Government claimed that there were no present cases of COVID-19 at FMC Devens.  (See Doc. No. 131 at 8.)  As of the filing of this Opinion, 266 inmates and 11 staff members have tested positive for COVID-19 at FMC Devens.  See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (January 6, 2021), https://www.bop.gov/coronavirus/. These current numbers "are based on the most recently available confirmed lab results involving open cases. . . ."  Id. (emphasis omitted). Given this increase in confirmed cases, COVID-19 is present, to a significant degree, at FMC Devens.  However, the Court notes that the BOP has implemented precautions to quarantine infected and symptomatic inmates to contain the virus's spread.  (See Doc. No. 131 at 4-9.)

[9]  The CDC lists obesity as a COVID-19 risk factor.  See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (Oct. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  The CDC notes that a person is obese if they have a BMI over 30 kg/m$^2$. From July 2014 through February 2017, Defendant was not obese because he had a BMI below 30 kg/m$^2$.  (See Doc. No. 129 at 6, 14, 23, 26, 28, 38.)  Since November 2019, however, Defendant has had a BMI over 30 kg/m$^2$.  (See Doc. No. 132 at 3, 6.)

of vulnerability to COVID-19 necessary to justify compassionate release.  Courts routinely deny compassionate release on these grounds.  See, e.g., United States v. Williams, 15-471, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) (determining obesity with BMI of 31.5 kg/m$^2$ does not meet extraordinary and compelling reasons for release); United States v. Whiteman, 15-298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding mild obesity and hypertension fall short of extraordinary and compelling reasons for release); United States v. Snell, No. CCB-17-602, U.S. Dist. LEXIS 127310, at *5 (D. Md. July 20, 2020) (denying defendant's motion for compassionate release, noting that prediabetes does not increase vulnerability to COVID-19); United States v. Falci, No. 17-228, 2020 U.S. Dist. LEXIS 108498, at *12-14 (D.N.J. June 22, 2020) (denying defendant's motion for compassionate release although defendant suffered from hypertension because "[t]here is no indication that Defendant suffers from pulmonary hypertension or any other 'serious heart condition' that the CDC has identified as a high-risk factor.")  For these reasons, Defendant's obesity, alleged hypertension, and alleged diabetes do not establish extraordinary and compelling reasons justifying his compassionate release.[10]

### 2.    The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

The relevant § 3553(a) factors also do not support either Defendant's compassionate release to home confinement or a sentence reduction.  First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics.  See § 3553(a)(1). Defendant admits that the offenses that led to his incarceration are serious crimes.  (See Doc. No. 129 at 7.)  He also has an extensive criminal history, which includes possession of firearms and

---

[10]  Defendant is forty years old.  (See Doc. No. 131 at 4.)  He does not suffer from a terminal illness or a serious cognitive impairment, and he is not a caregiver to minor children.  See § 1B1.12 n.1(B)-(C).  Thus, these factors listed in the Sentencing Guideline Manual, see § 1B1.13 n.1(B)-(C) are not relevant here.

cocaine, disorderly conduct, gunpoint robbery, reckless endangerment, carrying a firearm without a license, simple assault, and burglary.  (See Doc. No. 131 at 16.)  Furthermore, Defendant has committed several disciplinary infractions while incarcerated.  (See id. at 3.)  In 2005, he used the prison mail service without authorization and was absent from his assignment.  (See id.)  In 2007, he twice used another inmate's phone access card and was involved in using the mail to bring heroin into the prison.  (See id.)  In 2015, he was sanctioned twice for possessing a mobile telephone.  (See id.)  Given all this background, there is no assurance that Defendant would be deterred from committing additional crimes if released.  In short, he is still a danger to the community.

The Court also has considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him.  § 3553(a)(2)(A)-(C).  Defendant has less than one year remaining on his sentence; however, the magnitude of his crimes warrant the sentence he received.[11]  For this reason, his release at this point would neither reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes Defendant may commit.  (See Doc. No. 27 at 16.)

---

[11] In United States v. Pawlowski, 967 F.3d 327 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3553(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

Pawlowski, 967 F.3d at 331.

14

Lastly, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6).  Defendant received a sentence within the range set by the Sentencing Guidelines, which Congress created to specifically address sentencing disparities.  To reduce Defendant's sentence would frustrate the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses.  Therefore, none of the applicable § 3553(a) factors favor either Defendant's release to home confinement or a sentence reduction.

IV.    **CONCLUSION**

For the foregoing reasons, Defendant's Emergency Motion to Reduce Sentence (Doc. No. 129) will be denied.  An appropriate Order follows.